UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHARON SMITH, ) | |
| ) | |
| Plaintiff, ) | Case No. 10 C 4505 |
| ) | |
| v. ) | Judge Edmond E. Chang |
| ) | |
| CNA FINANCIAL CORPORATION, and ) | |
| CONTINENTAL CASUALTY COMPANY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sharon Smith alleges that CNA Financial Corporation and Continental Casualty Company (collectively "Defendants" or "CNA" unless context dictates otherwise) discriminated against her on the basis of her race and age, and retaliated against her, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*. and the Age Discrimination in Employment Act, 29 U.S.C. § 623.[1] Defendants have moved to dismiss [R. 26] all claims in Smith's second amended complaint [R.25] pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion is granted.[2]

**I.**

At this stage of the litigation, we accept Plaintiff's allegations as true and draw reasonable inferences in Plaintiff's favor. Sharon Smith, an African-American female

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

[2]The Court appreciates the able efforts of Smith's appointed counsel in this case and thanks him for his service.

in her late-fifties, began working at CNA as a temporary employee in 1995. R. 25 ¶¶ 6, 10. In 1997, she was hired as a full-time employee, where she remained until July 1, 2005. *Id.* From 1999 to July 1, 2005, Smith held the position of Installation Tech and earned approximately $37,000 per year, plus benefits. *Id.* ¶¶ 10, 11. Smith always received positive employee evaluations and was never cited or disciplined for any misconduct during her employment at CNA. *Id.*

In around 2004, Bob Murphy, an employee in CNA's telecom department, announced that he planned to retire soon. *Id.* ¶ 15. Smith's supervisor, Tim Devins, recommended that she begin training with Murphy because she would be a logical replacement for his position. *Id.* ¶¶ 14-15. Mina Ghaliova, a temporary employee at CNA, was also interested in taking over Murphy's job. *Id.* ¶ 15. Ghaliova is a white female who Smith believes is ten to fifteen years younger than her. *Id.* Ghaliova was temporarily employed as a Telecom Specialist and earned around $50,000 per year. *Id.* In March 2004, after receiving some training from Murphy, Smith and Ghaliova were enrolled in the same training program at CNA. *Id.* ¶ 16. Throughout the year, Murphy routinely cancelled or re-scheduled Smith's training sessions. *Id.* ¶ 17. Meanwhile, Ghaliova continued to be trained by Murphy and CNA. *Id.* When Murphy retired near the end of 2004, Ghaliova was chosen to replace him. *Id.* ¶ 18. Because the job vacancy was not posted, Smith never had an opportunity to apply or interview for Murphy's position. *Id.*

In December 2004, Smith contacted CNA's human resources department about being passed over for the promotion, and about the pay disparity between herself and Ghaliova. *Id.* ¶ 19. A few months went by, and CNA did not take any action with respect to the promotion or Smith's pay. *Id.* ¶¶ 19-20.

In March 2005, Smith filed a first charge with the EEOC alleging that CNA discriminated against Smith based on race when it hired a "temporary employee into a full time permanent position as a Telecommunications Specialist without first offering the position to [her]." *Id.* ¶ 20, Exh. A. On May 10, 2005, the EEOC issued Smith notice of her right to sue for the charge. R. 16-2. On June 30, 2005, Smith attended a meeting with David Hall, a manager in CNA's telecommunications department, and representatives from human resources. R. 25 ¶ 22. At the meeting, Smith was informed that her employment at CNA was terminated as a part of a reduction in force. *Id.* July 1, 2005 was Smith's last day at CNA. *Id.* On July 12, 2005, Smith filed a second charge with the EEOC, stating that had been discharged after filing the first EEOC charge and CNA discriminated and retaliated against her because of her race in violation of Title VII. *Id.* ¶ 23, Exh. B.

On August 4, 2005, Smith filed an employment discrimination complaint in federal court *pro se.* R. 16-2. After Smith failed to pay the filing fee, the district judge assigned to that case dismissed Smith's complaint on September 21, 2005 for want of prosecution. *Id.* In March and September 2009, Smith called the EEOC to inquire about the status of her second charge. R. 25, Exh. D. When she still had not heard

back months later, Smith emailed the EEOC regarding the second charge. *Id.* On April 21, 2010, Smith visited the EEOC's office in person and received a copy of the letter notifying her of her right to sue for the second charge. *Id.* ¶ 4. The letter was dated September 25, 2009. *Id.* ¶ 4, Exh. C. Smith filed the instant lawsuit *pro se* on July 20, 2010, *id.* ¶ 5, and was appointed counsel.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010) (courts accept factual allegations as true and

draw all reasonable inferences in plaintiff's favor). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are *factual*, rather than mere *legal* conclusions. *Iqbal*, 129 S.Ct. at 1950.

### III.

### A.

As an initial matter, the Court finds that, based on the current state of the record, Smith's action is timely insofar as it was filed within 90 days of her receipt of the right-to-sue letter.[3] Pursuant to 42 U.S.C. § 2000e-5(f)(1), the EEOC must notify a complaining party when it dismisses a charge of discrimination. At that point, according to the statute, "within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge." 42 U.S.C. § 2000e-5(f)(1). The Seventh Circuit requires written notice and has consistently held "that the 90-day period does not start running until the claimant (or her agent) actually receives the right-to-sue letter from the EEOC." *DeTata v. Rollprint Packaging Prods.*, 632 F.3d 962, 967 (7th Cir. 2011) (internal citations omitted).

---

[3]Although an untimely complaint would not deprive this Court of jurisdiction, it would serve as an independent ground to dismiss Smith's complaint in its entirety. Thus, the Court elects to address this issue as a threshold question.

In *DeTata*, there was a dispute over when the plaintiff received actual notice of her right to sue. Acknowledging the limited record at the motion to dismiss stage, the Seventh Circuit stated that "[b]ecause a failure to sue within 90 days is an affirmative defense, [the defendant] had the burden of showing that [the plaintiff's] complaint was filed more than 90 days after she received sufficient notice of her right to sue. That means that the absence of evidence in the record about what the EEOC told [the plaintiff] . . . cuts against [the defendant]." *DeTata*, 632 F.3d at 970. As far as the record showed, the plaintiff in *DeTata* "never failed to update her mailing address or to follow her case diligently. Instead, it was the EEOC's mishandling of [her] case that caused the delay, when it misaddressed her right-to-sue letter and lost her file for over a month." *Id.* at 969 (a plaintiff should not lose the right to sue because of fortuitous circumstances or events beyond her control which delay receipt of the EEOC's notice) (citing *St. Louis v. Alverno Coll.*, 744 F.2d 1314, 1316 (7th Cir. 1984)). Therefore, the Seventh Circuit vacated the district court's decision to dismiss the complaint as untimely and instructed the district court to determine whether an evidentiary hearing was necessary to evaluate the timeliness issue. *Id.* at 970.

Here, the EEOC's letter giving Smith notice of her right to sue on the second charge is dated September 25, 2009. R. 25 ¶ 4, Exh. C. However, Smith states that she never received the letter by mail. R. 25 ¶ 4. Rather, she alleges that she received the letter when she visited the EEOC's office on April 21, 2010. R. 25 ¶ 4, Exh. E.

6

Smith filed her *pro se* complaint, R. 1, on July 20, 2010 – ninety days after she claims she actually received notice of her right to sue on the second EEOC charge. R. 25 ¶ 5.

In its opening brief, CNA argues that Smith's complaint should be dismissed because it was not timely filed. R. 27 at 4-5. CNA's position is that Smith had ninety days from the date the right-to-sue letter was *issued* on September 25, 2009 to file a lawsuit. *Id.* CNA argues that the issuance date, not the actual receipt date, should control because, allegedly, Smith changed her address without informing the EEOC and thus she is to blame for the failure to receive a mailed copy in September 2009. CNA points out that the second charge Smith filed with the EEOC on July 12, 2005 contains a different address than the one listed on Smith's right-to-sue letter dated September 25, 2009. R. 27 at 6 (citing R. 25, Exhs. B, C). However, other than this difference in addresses – which could be explained by any number of reasons for which Smith is not blameworthy (including that Smith did update the EEOC, or that Smith received mail at two addresses) – there currently is no record evidence that Smith failed to notify the EEOC of any alleged address change. CNA has failed to meet its burden to prove untimeliness. If the Court were not dismissing the case on other grounds, as explained below, then CNA would have to produce further evidence or request an evidentiary hearing on the timeliness issue before prevailing on a motion to dismiss on that ground.

**B.**

Next, CNA makes a *res judicata* argument that relies on a previous federal court action filed by Smith in 2005 (*Smith I*). R. 27 at 3, 9-10. CNA attaches to its motion

to dismiss documents from *Smith I* that make a *res judicata* determination possible – specifically, the complaint and the order dismissing the action. R. 27, Exh. B.[4] This Court takes judicial notice of *Smith I* and its disposition. Technically, as a defense, *res judicata* cannot be raised until a motion for judgment on the pleadings under Rule 12(c). *Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 664 (7th Cir. 2007). However, a court may take judicial notice of matters of public record without converting a motion to dismiss to one for summary judgment. *See* Fed. R. Evid. 201; *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-82 (7th Cir. 1997). Proceedings and records from other courts fall under this exception. *See Gen. Elec. Capital Corp.*, 128 F.3d at 1080-82; *Opoka v. INS*, 94 F.3d 392, 395 (7th Cir. 1996) (well-settled principle that the decision of another court is a proper subject of judicial notice). The only requirement is that the adjudicative fact must not be "subject to reasonable dispute" in that it is either (i) "generally known within the territorial jurisdiction of the trial court" or (ii) "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Because *Smith I* satisfies all of the requirements of Rule 201, the Court will take judicial notice of that decision.

---

[4]The exhibits are actually attached to CNA's motion to dismiss Smith's First Amended Complaint, which can be found at R. 16. CNA did not re-attach the exhibits to its motion to dismiss Smith's Second Amended Complaint.

1. *Termination and Retaliation*

In light of *Smith I*, it is clear that Smith is precluded from bringing her Title VII and ADEA claims for unlawful termination and retaliation (Counts 3, 4, 5). The federal version of *res judicata*, or claim preclusion, applies here because the earlier judgment was rendered by a federal court. *See Schor v. Abbott Labs.*, 457 F.3d 608, 615 (7th Cir. 2006); *Barnett v. Stern*, 909 F.2d 973, 977 (7th Cir. 1990). Claim preclusion prevents a plaintiff from engaging in piecemeal litigation by bringing claims that were or could have been brought in an earlier lawsuit. *D & K Props. Crystal Lake v. Mut. Life Ins.*, 112 F.3d 257, 259 (7th Cir. 1997). It is "designed to ensure the finality of federal judgments in order to encourage reliance on judicial decisions, bar vexatious litigation, and free courts to resolve other disputes." *Doe v. Allied-Signal*, 985 F.2d 908, 913 (7th Cir. 1993). The Seventh Circuit has identified three requirements that a party asserting claim preclusion must satisfy: (1) identity of the claim; (2) identity of the parties, which includes those in privity with the original parties; and (3) a final judgment on the merits. *Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007). Each of these requirements are present in this case, and Counts 3, 4, and 5 must be dismissed.

First, two cases involve the same claim if they arise out of the same transaction. *Ross*, 486 F.3d at 283. Under the same transaction test, courts look to whether "a single core of operative facts form[ed] the basis of both suits." *Prochotsky v. Baker & McKenzie*, 966 F.2d 333, 334-35 (7th Cir. 1992). "The inquiry, focusing on the facts of

9

a situation, is intended to discover whether the plaintiff could have raised the issue in the first suit." *Doe*, 985 F.2d at 913 (citing *Fed. Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981)); *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986) (all claims arising from the transaction that caused plaintiff's injury must be brought in one suit or lost). In her current lawsuit (*Smith II*), Smith alleges that CNA terminated her because of her race in violation of Title VII (Count 3). See R. 25 at 7. Smith further claims that her termination was retaliatory because CNA fired her after she complained about its unlawful employment practices in violation of Title VII (Count 5). R. 25 at 9. There can be no dispute on this question – the race discrimination claims in *Smith I* and *Smith II* arise out of CNA's failure to promote Smith and its subsequent decision to terminate her. Therefore, Counts 3 and 5 are dismissed.

Unlike Smith's first action, her complaint in *Smith II* also alleges that CNA engaged in age discrimination (Counts 4, 5). R. 25, at 6-9. Despite this new legal theory, both suits arose out of the same facts, namely CNA's failure to promote Smith and its subsequent decision to terminate her. *See Muhammad v. Oliver*, 547 F.3d 874, 876 (7th Cir. 2008). "[T]wo claims are one for purposes of *res judicata* if they are based on the same, or nearly the same, factual allegations." *Hermann v. Cencom Cable Assocs.*, 999 F.2d 223, 226 (7th Cir. 1993); *Ross*, 486 F.3d at 283 (7th Cir. 2007) (dismissal based on res judicata required when the underlying allegedly wrongful events are the same). Here, Smith alleges that she was not promoted and, later, fired in violation of two federal statutes: Title VII and the ADEA. Her claims are the same

for purposes of claim preclusion because, although they would not have identical elements, the central factual issue would be the same at trial. Namely, whether she had been denied a promotion and had been terminated for unlawful discriminatory reasons. *See Hermann*, 999 F.2d at 226-27 ("it is enough that the question why she was fired would as a practical matter be at the center of the litigation of both claims"). Smith's Title VII and ADEA claims stem from the same set of operative facts – CNA's decision not to promote Smith and then to terminate her six months later. *Prochotsky v. Baker & McKenzie*, 966 F.2d 333, 335 (7th Cir. 1992) (plaintiff's ERISA and Title VII suits shared an identity of cause of action because both actions arose from plaintiff's termination). Therefore, Counts 4 and 5 are barred by claim preclusion.

Moreover, the mere fact that Smith had not obtained a right to sue letter as of the time that *Smith I* was commenced is no bar to the application of claim preclusion here. *See Czarniecki v. City of Chicago*, 633 F.3d 545, 550-51 (7th Cir. 2011); *Groesch v. City of Springfield*, – F.3d –, 2011 WL 1105593, at *8 (7th Cir. Mar. 28, 2011). Like the plaintiff in *Czarniecki*, Smith could have avoided claim preclusion by: (i) asking the district court to stay her case until she had exhausted her Title VII administrative remedies; (ii) contacting the EEOC to expedite the administrative process and/or obtain an earlier right-to-sue letter; and/or (iii) delaying the filing of her first lawsuit based on the Title VII claims. *See Czarniecki*, 633 F.3d at 551. Smith's choice to pursue her Title VII claim first, "without taking any of those steps, means that her additional legal theories arising from the same events are barred by claim preclusion or *res*

11

*judicata." Id.* at 551; *see also Owens v. City of Chicago*, 2009 WL 2778079, at *5 (N.D. Ill. Aug. 31, 2009) (dismissing plaintiff's ADA claim on res judicata grounds because it could have been brought in prior state court litigation and plaintiff failed to avail himself of the opportunity to obtain a right-to-sue letter before or during the pendency of the state court lawsuit).

The second and third elements of claim preclusion are also satisfied here. Claim preclusion requires that the parties to the present case and the earlier case are identical. *See Tartt v. Nw. Cmty. Hosp.*, 453 F.3d 817, 822 (7th Cir. 2006). The *Smith I* judgment's claim-preclusion effect clearly covers CNA, which is named as a defendant in each suit. It is of no consequence that Smith's first lawsuit named CNA and David Hall as defendants, whereas the present suit names CNA and its wholly owned second tier subsidiary, Continental Casualty Company. As CNA's wholly owned subsidiary, Continental is protected because "*[r]es judicata* bars subsequent suits against those who were not a party to a prior suit if their interests are closely related to those who were." *Tartt*, 453 F.3d at 822-23 (citations omitted). All of the claims Smith alleged against Continental arose from her employment with CNA. *See id.* CNA and Continental are in privity and claim preclusion bars Smith's actions against them both. *See Garcia v. Vill. of Mount Prospect*, 360 F.3d 630, 636 (7th Cir. 2004).

Finally, there was a final judgment on the merits in *Smith I*. The district court dismissed *Smith I* for want of prosecution on September 21, 2005. *See* R. 16-2. Pursuant to Rule 41(b), this amounts to a final judgment on the merits. *Tartt*, 453

F.3d at 822; *Horwitz v. Alloy Auto.*, 992 F.2d 100, 102 (7th Cir. 1993) (a dismissal for failure to prosecute constitutes a final judgment on the merits). Claim preclusion bars Counts 3, 4, and 5.

    2.    *Pay Disparity*

Turning to Smith's pay-disparity claims (Counts 1 and 2), the Court finds that claim preclusion does not apply (although, as explained *infra*, the pay disparity claims must be dismissed for a different reason). As already discussed, elements two and three of the claim preclusion test are satisfied: the parties in both actions are the same and *Smith I* resulted in a final judgment on the merits. However, Counts 1 and 2 of Smith's present complaint do not share an identity of a cause of action with *Smith I*. The *Smith II* complaint is the first time that Smith alleges that CNA discriminated against her by paying her less compensation than similarly situated employees. *See* R. 16-2; R. 25 at 5-6. And Smith's current allegations of unequal pay do not necessarily arise out of the same core of operative facts as her initial discrimination claims. *See Prochotsky*, 966 F.2d at 334-35. For instance, Counts 1 and 2 allege that Smith was underpaid "[t]hroughout the course of [her] employment." R. 25 at 5-6. In contrast, the basis of Smith's first lawsuit related to a different set of facts: CNA's failure to promote Smith, and CNA's decision to terminate her. See R. 16-2. Thus, Counts 1 and 2 are not based on the same, or nearly the same, factual allegations as the claims in *Smith I*.

Nonetheless, Counts 1 and 2 do not survive CNA's motion to dismiss. As discussed further below, precisely what saves Smith's pay disparity claims from the application of claim preclusion simultaneously mandates their dismissal. In addition to omitting Counts 1 and 2 from her complaint in *Smith I*, Smith did not make any allegations of unequal pay in the underlying EEOC charges; therefore, they are outside of the scope of Smith's EEOC charge and must be dismissed on that ground.

**C.**

The "scope of the charge" doctrine provides that an ADEA or Title VII plaintiff ordinarily may not bring in federal court claims that were not previously presented to the EEOC. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974); *Miller v. Am. Airlines*, 525 F.3d 520, 525 (7th Cir. 2008). The EEOC exhaustion rule "serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employer some warning of the conduct about which the employee is aggrieved . . . . For allowing the complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Cheek v. W. & S. Life Ins.*, 31 F.3d 497, 500 (7th Cir. 1994); *see also Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 689 (7th Cir. 2001).

CNA contends that Smith did not exhaust her claim that she was paid less than similarly situated employees because of her race and age.[5] R. 27 at 7-9. Indeed, Smith's second EEOC charge does not mention an unlawful pay disparity. *See* R. 25, Exh. A. Smith concedes that all of her claims in the present suit are based on the second EEOC charge. R. 32 at 8 n.3. The concession is necessary because the 2005 lawsuit was premised on the first EEOC charge, and that lawsuit was dismissed. However, without citing any authority, Smith takes the position that because her first EEOC charge was identified in the second charge, "the events underlying the First Charge would be a part of the EEOC's investigation of the Second Charge, even if a lawsuit based on that charge would not lie." R. 32 at 8. The Court need not determine if an investigation of the first charge would, in fact, take place on this basis because, like her second charge, Smith's first charge does not allege pay discrimination. In her first charge, Smith simply alleged that CNA discriminated against her on the basis of her race, when it "hired a temporary employee into a full time permanent position as a Telecommunications Specialist without first offering the position to [her]." R. 25, Exh. A. Smith's second charge states that CNA fired her for filing the first EEOC charge of discrimination. R. 25, Exh. B. In terminating her employment, Smith charged that CNA retaliated against her and discriminated against her because of her

---

[5]It is appropriate for this Court to consider CNA's "scope of the charge" challenge at the motion to dismiss stage. *See Leskovec v. Circuit Works*, 2008 WL 5236006, at *2 (N.D. Ill. Dec. 15, 2008) ("Although failure to exhaust administrative remedies is an affirmative defense, when a plaintiff pleads facts showing that his claim is barred by that defense, it is appropriate to address it in the context of a motion to dismiss.").

race. R. 25, Exh. B. Although the factual basis for a discrimination claim in federal court must previously have been presented in an administrative charge, "because most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Cheek*, 31 F.3d at 497. However, simple or general allegations of discrimination in an EEOC charge are not a sufficient predicate for bringing any discrimination theory in federal court. *See Cheek*, 31 F.3d at 501.

In this case, neither of Smith's EEOC charges contain the pay disparity discrimination claims pursuant to Title VII and the ADEA that Smith now alleges in her complaint. Moreover, Counts 1 and 2 are not "like or reasonably related to the allegations of the [EEOC] charge," nor do they "grow[] out of such allegations." *Cheek*, 31 F.3d at 500. Although Smith need not have drafted her EEOC charge with legal precision, she was required to put the EEOC or CNA on notice of any allegedly discriminatory conduct. *See Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005). Her charge fails to describe any conduct regarding unequal pay that is alleged in the complaint. As a result, Counts 1 and 2 are dismissed.

Likewise, the "scope of the charge" doctrine serves as an additional bar to Smith's age discrimination claims. As discussed, claim preclusion bars Smith from bringing Counts 4 and 5, but these claims also fall outside of the scope of her underlying EEOC charges. Nothing in either charge states that CNA discriminated against Smith on the basis of age. Smith argues that the EEOC's investigation of her race discrimination claim "would have" revealed her age discrimination claim because

16

the "temporary employee" referenced in the first charge was significantly younger than Smith. R. 32 at 8. This argument is without merit. Even if it is possible that the alleged age discrimination could have been discovered in the course of the EEOC's investigation, Smith's age-based claim must be dismissed because the administrative charges gave notice only of the race discrimination. *See Geldon*, 414 F.3d at 819. The EEOC and CNA were not put on proper notice with respect to Smith's age discrimination claims, and Counts 4 and 5 were also outside the scope of the charge.

## IV.

For the reasons discussed above, the Court grants Defendants' motion to dismiss [R. 26].

ENTERED:

_____
Honorable Edmond E. Chang
United States District Judge

April 25, 2011